IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | | |
|---|---|---|
| JOHN OSBOURNE CRANDELL, III, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 5:21-cv-00050 |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

Plaintiff John Osborne Crandell, III, proceeding pro se, brought this action under the

Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, challenging four FOIA responses he

received from the U.S. Department of Commerce, Economic Development Administration

("EDA") and seeking both monetary and injunctive relief.  (Compl., Dkt. No. 1.)  Crandell

named as defendants the EDA, as well as two of its employees, Christopher Anderson and

Andrew Fiddes.  (*Id*.)  The United States ("Government") moved to substitute itself as the sole

defendant and dismiss the FOIA claims against the EDA employees (Dkt. No. 5) pursuant to the

Westfall Act, 28 U.S.C. § 2679, which motion this court granted (Dkt. No. 30).

Before the court are the Government's motion to dismiss the complaint under Federal

Rule of Civil Procedure 12(b)(1) or, in the alternative, for summary judgment under Rule 56

(Dkt. No. 20); Crandell's motion for partial summary judgment (Dkt. No. 25); Crandell' motion

for an extension of time to correct a deficiency in service of process (Dkt. No. 12); and the

Government's motion for leave to file out of time and for an extension of time to file an answer

(Dkt. No. 15).  These motions are ripe for resolution, and the court finds that a hearing is

unnecessary to resolve the motions.  For the reasons stated below, the court will grant the

1

Government's motion to dismiss as to two of Crandell's FOIA claims, grant the Government's motion for summary judgment as to the two remaining FOIA claims, deny Crandell's motion for partial summary judgment; and deny the remaining motions as moot.

## I.   BACKGROUND

Crandell, a resident of Star Tannery, Virginia, made four FOIA requests to the EDA seeking documents relating to an EDA grant from the 1990s for a development project in Hardy County, West Virginia, which he alleges involved a "Major Fraud of the U.S. Government." (Compl. 5.)[1]  Crandell now seeks monetary and injunctive relief due to an alleged failure by the Government to adequately respond to those requests.  (*Id.* 6.)

### A.  PRO 18-12

On December 5, 2017, Crandell submitted a FOIA request through the FOIAOnline system, seeking copies of "documents related to Economic Development Authority project 01-01-03226," including "description, terms and stipulations of the grant associated with the project."  (Mem. in Supp. of Mot. Dismiss, or in the Alternative, Mot. Summ. J. [hereinafter "Def.'s Mem. in Supp."], Dkt. No. 19, Ex. 9 [hereinafter "Anderson Decl."] ¶ 3.)  This request was assigned FOIA File Number PRO 18-12.  (*Id.*)

Christopher Anderson, then an Attorney Advisor supporting EDA's Philadelphia regional office and the Regional Freedom of Information Act Officer, received the request the same day. (*Id.*)  As was his "usual practice" when processing FOIA requests, Anderson began by searching the project number in EDA's Operations Planning and Control System ("OPCS")—a database

---

[1]  This is the fourth in a series of lawsuits in which Crandell has alleged this conspiracy in connection to a variety of federal causes of action, including FOIA.  *See Crandell v. Hardy Cnty. Rural Dev. Auth.*, No. 2:18-cv-87 (N.D.W. Va. filed Aug. 29, 2018) (fraud against the United States); *United States ex rel. Crandell v. Hardy Cnty. Rural Dev. Auth.*, No. 2:18-cv-124 (N.D.W. Va. filed Nov. 29, 2018) (False Claims Act); *Crandell v. U.S. Nat'l Archives & Recs. Admin.*, No. 2:21-cv-16 (N.D.W. Va. filed June 11, 2021) (FOIA).

which provides "basic information on EDA's grants," including "historical grants." (*Id.* ¶ 4.) The information available in the OPCS database indicated to Anderson "that the grant was awarded to Hardy County (West Virginia) R[ural] D[evelopment] A[ssociation] on May 27, 1992, and that the last payment was made on or around May 15, 1995." (*Id.* ¶ 5.) This indicated to Anderson that any documents responsive to Crandell's request would likely be located, if anywhere, at the Federal Records Center ("FRC") and not in the Philadelphia office. (*Id.*) Nevertheless, Anderson checked the file storage area at the Philadelphia office and confirmed with an EDA staff member responsible for those files that there were no responsive documents. (*Id.*) Anderson then directed another staff member to put a request in with the FRC for any files related to this grant project. (*Id.* ¶ 6.) Several days later, the FRC responded that it did not find any such records. (*Id.* ¶ 7.)

On January 5, 2018, Anderson responded to Crandell's request by e-mail and U.S. mail[2] and informed him that EDA was not able to find any responsive documents. (Def.'s Mem. in Supp., Ex. 2, at 2.) Anderson acknowledged that he had made a request to the FRC for archived documents, but that FRC was unable to find any such documents. (*Id.*) Anderson further noted that the project referenced in the request "was completed in 1995" and "under EDA's records retention schedule, records related to construction projects are normally destroyed twenty years after project completion."[3] (*Id.*) Anderson also advised Crandell of his right to file an

---

[2] The letter itself is dated January 5, 2017. However, the Government acknowledged in its motion to dismiss that this was a typographical error and that the letter was actually sent on January 5, 2018, which Crandell has not disputed.

[3] Anderson alleges that, although he "thought it likely that the records had been destroyed" pursuant to the retention schedule, he refrained from saying so to Crandell because he "did not actually know that to be the case" since "[t]he FRC only indicated that the documents were not found," and it remained possible "that the documents were simply lost. (Anderson Decl. ¶ 8.)

administrative appeal under the Department of Commerce's FOIA regulations and supplied the information necessary to do so.  (*Id.* 2–3.)

The Government alleges that Crandell "did not file any administrative appeal of the EDA's response to PRO 18-12."  (Def.'s Mem. in Supp. 3; *see also* Anderson Decl. ¶ 9 ("I have confirmed with the Department of Commerce's Office of General Counsel that no appeal was received.").)  Crandell maintains that he "submitted FOIA appeal and complaint directly to the Dep[artmen]t of Commerce Counsel for the Inspector General" via an e-mail dated May 28, 2021, to which Counsel for the Inspector General "failed to respond."  (Pl.'s Response to Mot. Dismiss, or in the Alternative, Mot. Summ. J. [hereinafter "Pl.'s Response"], Dkt. No. 22, at 15.)

## B.  PRO 19-06

On December 25, 2018, Crandell sent another FOIA request to Anderson via e-mail. (Def.'s Mem. in Supp., Ex. 2, at 1.)  He first asked for documents reflecting EDA's "source of knowledge that EDA project 01-01-3226 was completed in 1995."  Crandell was referring to Anderson's statement from his January 5, 2018 letter responding to PRO 18-12, a screen shot of which Crandell embedded in the e-mail.  (*Id.*)  He also asked Anderson to "describe any other type of metadata, log, data table or other report that maintains information about projects such as EDA 01-01-3226."  (*Id.*)  This request was assigned FOIA File Number PRO 19-06.  (Anderson Decl. ¶ 12.)

Anderson received this e-mail on January 28, 2019.[4]  As to the first part of Crandell's request, Anderson printed out a two-page report from OPCS (*see* Def.'s Mem. in Supp., Ex. 3, at 4–5) that included the information about project 01-01-03226 that Anderson had consulted

---

[4] Anderson alleges that he only first received the request on this date because he was furloughed during lapses in appropriations from December 22, 2018, to January 25, 2019, during which time he was unable to access his office or e-mail.  (*See* Anderson Dec. ¶ 12.)

before responding to PRO 18-12.  (*Id.* ¶¶ 12–13.)  At this time, Anderson understood OPCS to be the "sole repository of the type of information" that Crandell was seeking.  (*Id.* ¶ 13.)

Anderson responded to this request on February 22, 2019.  (Def.'s Mem. in Supp., Ex. 3, at 1.)  With respect to EDA's "source of knowledge" as to the year the project was completed, Anderson provided all documents related to that project that were then available in OPCS (i.e., the two-page report).  (*Id*. 4–5.)  "As a courtesy," however, Anderson informed Crandell that the OPCS system was put into operation "in the late 1990s," so OPCS would only have "basic information" on grants awarded before its first date of operation (such as project 01-01-03226).  (*Id.* 1.)  As for the "metadata, log, data table or other report[s]" related to the project, Anderson informed Crandell that there were no responsive documents.  (*Id.*)  Anderson also advised Crandell of his right to file an administrative appeal under the Department of Commerce's FOIA regulations and provided the information necessary to do so.  (*Id*. 2)

As with PRO 18-12, the Government alleges that Crandell "did not file any administrative appeal of the EDA's response to PRO 19-06."  (Def.'s Mem. in Supp. 5; *see also* Anderson Decl. ¶ 15 ("I have confirmed with the Department of Commerce's Office of General Counsel that no appeal was received.").)  Crandell's response is the same: that he "submitted FOIA appeal and complaint directly to the Dep[artmen]t of Commerce Counsel for the Inspector General" via an e-mail dated May 28, 2021, to which Counsel for the Inspector General "failed to respond."  (Pl.'s Response 15.)

## C.  PRO 20-34

On May 2, 2020, Crandell sent a third FOIA request to Anderson, requesting copies of (1) "all writings and records . . . pursuant to [EDA's] Federal Records Center archive retrieval requests in response to my FOIA request PRO-18-12 . . . and the [FRC's] response to your

archive retrieval request"; (2) "all writings and records . . . pursuant to the [FRC] destruction of documents schedule related to EDA project # 01-01-03226"; (3) "any record or writing including the Transfer Number, Accession Number, Location Number, Box Number or any other archive retrieval references for the documents of EDA project #01-01-03226"; and (4) "any writings or records that indicate the existence, or confirm the non-existence, of any **other** EDA grant projects with Hardy County Rural Development Authority that were concurrent with EDA project # 01-01-03226 (1992-1997)."  (Def.'s Mem. in Supp., Ex. 4 (emphasis in original).)  This request was assigned FOIA File Number PRO 20-34.  (Anderson Decl. ¶ 16.)

At that time, Anderson was transitioning to a new role and had already transferred most of his duties to Andrew Fiddes, then an Attorney-Advisor supporting several EDA regional offices (including Philadelphia) and a FOIA Officer for the Philadelphia Office.  (*Id.* ¶ 17; Def.'s Mem. in Supp., Ex. 10 [hereinafter "Fiddes Decl.] ¶¶ 1–2.)  Anderson reached out to Fiddes via telephone regarding Crandell's request, as Fiddes was the physically located in Atlanta.  (Anderson Decl. ¶ 17; Fiddes Decl. ¶ 4.)  Together, they reviewed the procedure for responding to FOIA requests and discussed Crandell's previous requests, including the searches Anderson had already conducted in response to those requests.  (Fiddes Decl. ¶ 4.)  Fiddes also reviewed the data in the OPCS database.  (*Id.*)  During the conversation, Anderson confirmed for Fiddes that there were no responsive documents located at the Philadelphia office.  (*Id.* ¶ 5.)  After the conversation, Anderson sent Fiddes a copy of EDA's approved document retention schedule to provide Crandell in response to the second categorized request within PRO 20-34.  (Anderson Decl. ¶ 17; Fiddes Decl. ¶ 5.)

Having confirmed that there were no responsive documents in the Philadelphia office, Fiddes directed a staff member to request from the FRC any files related to project 01-01-03226.

(Fiddes Decl. ¶ 6.)  Several days later, the FRC responded and confirmed, as it previously had for Anderson, it had not located any responsive records.  (*Id.* ¶ 7.)

On June 2, 2020, Fiddes responded to Crandell's request via e-mail letter[5] with "all responsive documents in its possession," totaling 19 pages.  (Def.'s Mem. in Supp., Ex. 5, at 2.) Those documents included a records retention schedule from the National Archives and Records Administration, as well as computer screen shots Fiddes had created of the OPCS system which showed a list of EDA grant projects within the State of West Virginia from 1992 through and including 1997.  (*Id.*; Fiddes Decl. ¶ 8.)  Project # 01-01-03226 was listed in the screen shots. (*See* Def.'s Mem. in Supp., Ex. 5, at 18.)

On June 29, 2020, Crandell e-mailed Fiddes regarding the responses to PRO 20-34.  (*Id.*, Ex. 6.)  Crandell stated that he considered Fiddes' response to the second request to be "adequately responsive," the response to the fourth request to be "incomplete," and the response to the first and third requests to be "completely unresponsive."  (*Id.* 1.)  Attempting to clarify his prior request, Crandell (1) asked for documentation of Anderson's "communications with the Federal Records Center" about records requests arising out of PRO 18-12; (2) asked for "additional screenshots of [the OPCS database's] West Virginia EDA project listings," now spanning from 1987 to 1991; and (3) reiterated the third request from PRO 20-34.  (*Id.* 1–2.)

On December 21, 2021,[6] Anderson assisted Fiddes with responding to these follow-up requests relating to PRO 20-34.  (Anderson Decl. ¶ 18).  Anderson collected the requested screen shots from OPCS (six in total), found a copy of a spreadsheet titled "PRO Archive Spreadsheet

---

[5] Although the letter attached to the e-mail begins "Dear Mr. Willett," the e-mail was addressed to "Mr. John O. Crandell, III" and sent to Crandell's e-mail address, which Crandell does not dispute.  (Def.'s Mem. in Supp., Ex. 5, at 1.)

[6] Fiddes attributed the delay in responding to this request to "the challenging environment for EDA during the COVID-19 pandemic and resultant remote work environment," as well as other factors.  (Fiddes Decl. ¶ 12.)

Final" that the Philadelphia office uses to record archive information for projects closed before 2010,[7] and found a copy of a document that explains EDA's process for archiving and retrieving project files.  (*Id.*)  Fiddes also located the report concerning this PDA grant that Anderson had already produced in response to PRO 19-06.

On December 23, 2021, Fiddes e-mailed a letter to Crandell with a more detailed response to PRO 20-34 that included the documents described above, totaling 31 pages of documents.  (Def.'s Mem. in Supp., Ex. 7, at 1–2.)  With respect to Crandell's request for documentation of Anderson's records requests to FRC, Fiddes found no responsive documents.  (*Id.* 1.)  He noted, though, that "EDA would not ordinarily expect to have such records" because "[t]he request to retrieve documents . . . would typically be made orally to the staff member responsible for coordinating with the FRC" and the staff member "would then make an electronic request" through the FRC's secure website, "which does not create a document."  (*Id.*)  Fiddes also advised Crandell of his right to appeal this determination of the request and supplied the information necessary to do so.  (*Id.* 3.)  The Government alleges that Crandell did not make an appeal "as prescribed in the applicable regulations."  (Def.'s Mem. in Supp. 5.)[8]  Crandell's response is the same as for the prior requests.  (Pl.'s Response 15.)

---

[7]  Fiddes alleged that the spreadsheet was "inadvertently overlooked" in EDA's initial response to this request, but that it "served no other purpose" beyond "confirming the file at issue was closed and moved to the archives."  (Fiddes Decl. ¶ 10.)  The spreadsheet confirms that files related to project #01-01-03226 were marked for disposal in January 2016.  (*See* Def.'s Mem. in Supp., Ex. 7, at 13–15.)

[8]  The Government elected not to formally challenge whether Crandell exhausted administrative remedies as to this request due to the EDA's delay in responding to Crandell's supplement to this request and its belief that the agency conducted a reasonable search.  (Def.'s Mem. in Supp., at 10.)  However, "the court has an independent duty to satisfy itself of its own subject matter jurisdiction," including whether a plaintiff has exhausted administrative remedies, "and may raise the issue *sua sponte*, even where the defendant does not directly challenge it.  *See Andrus v. Charlestone Stone Prods. Co., Inc*., 436 U.S. 604, 608 n.6 (1978).

**D.  PRO 22-11**

On July 29, 2020, Crandell, via e-mail letter addressed to Fiddes, requested copies of "any procedural protocol, and policy documents or directives for how [FOIA] requests are to be executed by the [EDA]" as well as "any other policy, procedure, or guideline document which directs which EDA personnel are authorized to make FOIA responses" that was "effective on December 5, 2017," which was the date Crandell submitted PRO 18-12.  (Compl., Attach. A(1).)

On December 21, 2021,[9] Fiddes, with Anderson's help, identified the documents responsive to the request.  (Fiddes Decl. ¶ 15.)  Fiddes found a section from EDA's Policy and Operations Manual dated April 27, 2016, (that was in effect on the identified date) which memorialized the delegation of authority to EDA's Chief Counsel to respond to FOIA requests. (*Id.*).  Anderson also confirmed, through EDA's Chief Counsel, that EDA has no other written delegations of authority to respond to FOIA requests.  (Anderson Decl. ¶ 19; Fiddes Decl. ¶ 15.)

On December 23, 2021, Fiddes responded to Crandell's request via e-mailed letter, releasing two pages of documents he noted were responsive to the request. Those documents were (1) the cover page of the Policy and Operations Manual; and (2) the page of the manual delegating to the Chief Counsel authority to respond to FOIA requests and to further delegate that authority.  (Def.'s Mem. in Supp., Ex. 8.)  Fiddes further advised Crandell that there were no other responsive documents—as EDA "does not maintain any written documents regarding how FOIA requests are to be fulfilled"—and directed him to EDA's FOIA web page for more information.  (*Id.*)

---

[9]  Anderson cited the same reasons for delay in responding to this request as for responding to PRO 20-34.

**E.  Crandell's Attempted Administrative Appeal and Subsequent Complaint**

On May 28, 2021, Crandell submitted a "Freedom of Information Act Appeal and Complaint" by e-mail to "FOIA@oig" and "[up]on receiving no confirming response," sent a printed copy by certified mail on June 7, 2021, to DOC's Office of the Inspector General at "Room 7898C, 1401 Constitution Avenue NW, Washington, DC 20230."  (Compl. 5.)  Crandell claims he did not receive "any response whatsoever."  (*Id.*).

On July 7, 2021, Crandell then filed this action under FOIA against Anderson, Fiddes, and EDA,[10] alleging he received "self-contradictory, misleading, and evasive responses regardeing [sic] the availability of requested contract documents of [EDA] grant project 01-01-03226 and related matters."  (*Id.*)  He further claimed that "subsequent FOIA requests answered by . . . Fiddes have been incomplete and related correspondences have been evasive and unresponsive."  (*Id.*)  Lastly, Crandell alleged that Anderson and Fiddes were not proper respondents to the requests due to conflicts of interest because the requests sought information "that was already known to [Anderson and Fiddes] to be related to suspected Major Fraud of the U.S. Government," which would "require[] the same person to provide proof of his own office['s] failure of [sic] professional performance."  (*Id.*)  For relief, Crandell sought corrected responses to each of the requests, compensatory damages "for financial losses due to pursuant delays in justice and ongoing harms," and punitive damages.  (*Id.* 6.)

## II.  ANALYSIS

**A.  Standard of Review for Pro Se Plaintiff**

Crandell's pro se complaint is entitled to a liberal construction. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  However, the court is not obliged to become an advocate for the

---

[10]  As discussed, the court has since granted the Government's motion to substitute itself as the sole defendant.  (Dkt. No. 30.)

unrepresented party, *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990), or "to construct full blown claims from sentence fragments," *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).  As with all plaintiffs, though, a pro se plaintiff must "demonstrate more than a sheer possibility that a defendant has acted unlawfully," and "articulate facts that, when accepted as true, demonstrate he has stated a claim entitling him to relief."  *Hodge v. Gansler*, 547 F. App'x 209, 210 (4th Cir. 2013) (quotation marks omitted).

## B.  Government's Motion to Dismiss for Lack of Subject Matter Jurisdiction

The Government moved to dismiss Crandell's FOIA claims as to its responses to PRO 18-12 and PRO 19-06 arguing that the court lacks subject matter jurisdiction because Crandell did not exhaust his administrative remedies for either request.  *See* Fed. R. Civ. P. 12(b)(1).[11]  A failure to exhaust administrative remedies under FOIA deprives the court of subject matter jurisdiction, requiring analysis under Rule 12(b)(1) at the motion to dismiss stage.  *See, e.g.*, *Dettmann v. U.S. DOJ,* 802 F.2d 1472 (D.C. Cir. 1986).

### 1.  Rule 12(b)(1) standard.

The court should grant a Rule 12(b)(1) motion "if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law."  *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991).  The plaintiff bears the burden of proving that the court has subject matter jurisdiction.  *See Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999).  On a 12(b)(1) motion, the court considers the pleadings "as mere evidence on the issue," and may look to other evidence, such as the

---

[11]  Courts within the jurisdiction of the Fourth Circuit are required to advise a pro se plaintiff of both his right to file responsive material to a motion and the possibility that a failure to respond may result in the court finding against the plaintiff.  *See generally Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975).  The court issued Crandell a *Roseboro* notice (Dkt. No. 21) advising him of his right to respond to the Government's motion within 21 days, which he did.  (Dkt. No. 22.)

declarations and exhibits appended to the motion and Crandell's response thereto.  *See*

*Richmond, Fredericksburg & Potomac R.R. Co.*, 945 F.2d at 768.

    **2.  Crandell did not exhaust his administrative remedies under FOIA.**

    FOIA "was enacted to facilitate public access to Government documents," *U.S. Dep't of*

*State v. Ray*, 502 U.S. 164, 173 (1991), and to vindicate the public's right to know "what their

government is up to," *U.S. DOJ v. Reps. Comm. for Freedom of the Press*, 489 U.S. 749, 773

(1989).  The statute provides, subject to certain enumerated exemptions, that upon a proper

request for records, each agency "shall make the records promptly available to any person."  5

U.S.C. § 552(a)(3)(A); *see also id*. § 552(b) (listing nine categories of documents to which FOIA

does not apply).  Upon receipt of a FOIA request, an agency has twenty working days to

"determine . . . whether to comply with such request," and it must "immediately notify the

person making such request of . . . such determination and the reasons therefor."  *Id.* §

552(a)(6)(A)(i).

    Before commencing litigation in federal court under FOIA, "a requester must ordinarily

exhaust administrative remedies by appealing an issue through the FOIA administrative process

following an initial adverse determination by the agency."  *Coleman v. Drug Enf't Admin*., 714

F.3d 816, 820 (4th Cir. 2013).  FOIA's exhaustion requirement provides the agency with an

"opportunity to exercise its discretion and expertise on the matter and to make a factual record to

support its decision."  *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 61 (D.C. Cir. 1990).

However, "to prevent agencies from keeping requesters out of court by simply delaying the

administrative process *ad infinitum*, Congress provided that a requester will be deemed to have

exhausted his or her administrative remedies 'if the agency fails to comply with the applicable

time limit provisions' laid out in FOIA."  *Coleman*, 714 F.3d at 823 (citing 5 U.S.C. §

552(a)(6)(C)(i)).  That said, "[if] the agency responds to the request before suit is filed," the

requestor must then exhaust his administrative remedies.  *Pollack v. U.S. DOJ*, 49 F.3d 115, 118

(4th Cir. 1995) (citations omitted); *see Oglesby*, 920 F.2d at 61 (concluding that the option to

bypass administrative remedies "lasts only up to the point that an agency actually responds").

The EDA received the PRO 18-12 request on December 6, 2017, and responded to

Crandell on January 5, 2018, which was within 20 working days.  (Def.'s Mem. in Supp. 10.)  At

that time, Anderson informed Crandell that he had the right to appeal that response, and that such

an appeal must be received by the Office of the Assistant General Counsel for Litigation,

Employment and Oversight within 90 days of the adverse determination,[12] either in writing or

electronically, at addresses provided in the letter.  (*Id.*, Ex. 1.)  As for PRO 19-06, the EDA

received the request on December 25, 2018, and responded on February 22, 2019.  (*Id.* 10.)

Although the response did not fall within 20 working days, EDA did respond prior to Crandell

bringing this action, thereby reinstating the requirement that Crandell first exhaust his

administrative remedies before filing suit.  *See Pollack*, 49 F.3d at 118.  Anderson has since

confirmed with DOC's Office of General Counsel that it never received any appeal.  (Anderson

Decl. ¶ 9, 15.)  Crandell alleged that he submitted a "complaint" by e-mail to "FOIA@oig" on

May 28, 2021, and then again via certified mail to DOC's Office of the Inspector General on

June 7, 2021.  (Compl. 5.)  In this respect, although the parties dispute the legal conclusion of

whether Crandell's actions constituted exhaustion, they do not dispute the "material

jurisdictional facts," such as the date on which Crandell sent his appeal documents and to where

---

[12]  The Government asserts that Crandell was required to file an administrative appeal of the PRO 18-12 determination within 90 days of the response.  (Def.'s Mem. in Supp. 10.)  Anderson's January 2018 letter also informed Crandell of the same.  (*Id.* Ex. 1.)  However, the DOC regulations in effect at that time (which remained in effect until August 9, 2018) mandated that appeals could be submitted within only "30 calendar days" of the adverse determination.  *See* 15 C.F.R. § 4.10(a)(1) (2018).  Those regulations were amended in August 2018 to extend that period to 90 days.  This discrepancy does not change the court's analysis, though, because Crandell did not file an appeal within either time frame.

and whom those documents were sent.  *See Richmond, Fredericksburg & Potomac R.R. Co.*, 945 F.2d at 768.

Crandell failed to exhaust his administrative remedies as to PRO 18-12 and PRO 19-06 for several reasons.  First, even assuming the complaint Crandell submitted in May 2021 via e-mail met any applicable form requirements for an appeal as to either request, it was submitted exceptionally late (at least three years late as to PRO 18-12, and at least two years late as to PRO 19-06) and to the wrong e-mail address (*see* Def.'s Mem. in Supp., Ex. 1 (listing the correct e-mail address as FOIAAppeals@doc.gov)).  Moreover, even assuming the complaint Crandell physically mailed in June 2021 met any form appeal requirements, it was incorrectly sent to the Office of the Inspector General, when Anderson's notice clearly instructed for appeals to be mailed to the Office of General Counsel.

"[E]xhaustion of administrative remedies is a mandatory prerequisite to a lawsuit under FOIA, which means that a requester under FOIA must file an administrative appeal within the time limit specified in an agency's FOIA regulations or face dismissal of any lawsuit complaining about the agency's response."  *Wilbur v. CIA*, 355 F.3d 675, 676 (D.C. Cir. 2004).  As such, the court will dismiss Crandell's claims as to EDA's responses to PRO 18-12 and PRO 19-06 for lack of subject matter jurisdiction given his failure to exhaust administrative remedies.

## C.  Government's Motion for Summary Judgment

### 1.  Summary judgment standard and FOIA.

In the alternative, the Government moved for summary judgment.[13]  The court must grant summary judgment if the movant shows "that there is no genuine dispute as to any material fact

---

[13]  Because the court has granted the Government's motion to dismiss Crandell's FOIA claims relating to its responses to PRO 18-12 and PRO 19-06, the court will entertain summary judgment only as to the remaining claims.

and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The party

seeking summary judgment has the initial burden of showing the absence of a material fact.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  A genuine issue of material fact exists "if

the evidence is such that a reasonable jury could return a verdict for the non-moving party."

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Once a motion for summary

judgment is properly made and supported, the non-moving party must show that a genuine

dispute exists.  *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 586–

87 (1986).  The party opposing summary judgment may not rest upon mere allegations or

denials.  Rather, the non-moving party "must set forth specific facts showing that there is a

genuine issue for trial."  *Anderson*, 477 U.S. at 250 (quotation omitted).

FOIA "requires each governmental agency to provide information to the public on

request if the request 'reasonably describes' the record[s] sought and is made in accordance with

published agency rule for making requests."  *Ethyl Corp. v. U.S. EPA*, 25 F.3d 1241, 1245 (4th

Cir. 1994) (citing 5 U.S.C. § 552(a)(3)).  In response to a valid FOIA request, the responding

agency is required to conduct a search that is "reasonably calculated to uncover all relevant

documents."  *Id.* at 1246.  The relevant standard for judging the adequacy of a search is not

"whether every single potentially responsive document has been unearthed . . . but whether the

agency has demonstrated that it has conducted a search reasonably calculated to uncover all

relevant documents."  *Id.* at 1246 (citations omitted).  "The agency may prove the reasonableness

of its search through relatively detailed, nonconclusory declarations or affidavits submitted in

good faith."  *Hill v. Exec. Office for the U.S. Attorneys*, No. 4:17-cv-00027, 2018 WL 736295, at

*3 (W.D. Va. Feb. 6, 2018) (internal quotations omitted).  "An agency is entitled to summary

judgment in a FOIA action if, viewing the facts in the light most favorable to the requestor, no

15

material facts are in dispute with regard to the agency's compliance." *Virginia-Pilot Media Cos.,*

*LLC v. U.S. DOJ,* 147 F. Supp. 3d 437, 443 (E.D. Va. 2015) (citing *Rein v. U.S. Patent &*

*Trademark Office,* 553 F.3d 353, 358 (4th Cir. 2009)).

### 2. The Government's searches and responses in relation to PRO 20-34 and PRO 22-11 complied with FOIA.

In PRO 20-34, Crandell first requested "all writings and records . . . pursuant to [EDA's]

Federal Records Center archive retrieval requests in response to [his] FOIA request PRO-18-

12 . . . and the [FRC's] response to [EDA's] archive retrieval request"; his follow-up e-mail

renewed that request.  In his responses, Fiddes informed Crandell that no such writings or

records were located and, as a courtesy not required under FOIA,[14] explained that the reasons for

the absence of documents were that his request to the EDA staff member was made orally and

the staff member's subsequent request to FRC was made through a secure system that does not

produce a document.  Crandell then asked for documentation of the "Federal Records Center

destruction of documents schedule related to EDA project # 01-01-03226."  In response, Fiddes

located and then provided to Crandell a copy of EDA's document retention schedule, as well as a

request for records disposition authority with the National Archives and Records Administration.

Crandell further asked for "archive retrieval references for the documents of EDA project #01-

01-03226" and documentation of "any other EDA grant projects with Hardy County Rural

Development Authority" between 1992 and 1997.  (Def.'s Mem. in Supp., Ex. 1.)  Once Fiddes

learned from Anderson that no such documents were in the Philadelphia office, he asked a staff

member to request responsive files from the FRC, and none were found.  Fiddes identified a

---

[14] *See, e.g., Hudgins v. IRS,* 620 F. Supp. 19, 21 (D.D.C. 1985) (explaining that FOIA does not require an agency to "create . . . opinions in response to an individual's request for information") citing *NLRB v. Sears, Roebuck & Co.,* 421 U.S. 132, 162 (1975)).

responsive spreadsheet used to archive information for projects closed before 2010 that was previously overlooked.  Lastly, Fiddes used the OPCS system to locate information in EDA grants to the State of West Virginia from 1987 through 1997 and then produced screen shots of that information in OPCS, which he likewise was not required to do under FOIA.[15]

In PRO 22-11, Crandell requested "any procedural protocol, and policy documents or directives for how Freedom of Information Act (FOIA) requests are to be executed by the Economic Development Authority . . . effective on December 5, 2017."  In response, Fiddes and Anderson produced the one page in the then-effective EDA policy manual that discussed FOIA requests and confirmed with the EDA Chief Counsel that there were no other written policy documents regarding responses to FOIA requests.

EDA's searches and responses to Crandell's requests far exceeded the standard of reasonableness required by FOIA.  For each request, EDA either produced responsive documents or provided a sensible explanation for why none existed (explanations which agencies are not required to provide).  *See Brown*, 835 F.3d at 1237.  There is also no indication that EDA ever asserted any exceptions to FOIA disclosure.  At times, EDA representatives even produced documents it had created specifically to cater to Crandell's request, such as screen shots of the OPCS database, which it was not required to do.  *See Hudgins*, 620 F. Supp. at 21.  In reply, Crandell either questioned EDA's gratuitous explanations for why a given request produced no responsive documents (*see, e.g.*, Compl. Attach. A(2) ("Your earlier suggestion that Mr. Anderson [made the requests to FRC] over a telephone conversation is implausibly atypical of modern administrative communications . . . .")) or make additional demands for documents that specifically authorized EDA to take each minute step that it took in responding to the FOIA

---

[15]    *See, e.g., Brown v. Perez*, 835 F.3d 1223, 1237 (10th Cir. 2016) (finding that FOIA does not require an agency to create screen shots).

requests (*see, e.g.*, *id.* ("If Mr. Anderson's communications with the [FRC] . . . are not available, then supply administrative policy and procedure documents that explain how this communication is authorized to be conducted.")) Crandell's response to the Government's motion did not identify any plain deficiency in EDA's responses to the requests other than its delay; rather, it insisted that the items requested were "reasonable" and reiterated allegations of fraud in the EDA grant project that are unrelated to the FOIA claims. (Pl.' Response 15–17.)

Lastly, Crandell's argument that Anderson and Fiddes were improper respondents to the FOIA requests because of alleged conflicts of interest is without support in the record. Crandell failed to adduce any evidence to support his contention that the same individuals who allegedly participated in a "Major Fraud of the U.S. Government" were responding to his FOIA requests, nor that they were aware of any such fraud. Bald assertions do not constitute evidence which will support a motion for summary judgment. *See Marriott Emps.' Fed. Credit Union v. Nat'l Credit Union Admin.*, No. Civ.A. 6-478-A, 1996 WL 33497625, at *8 (E.D. Va. Dec. 24, 1996).

Viewing the facts in the light most favorable to Crandell, the Government has nevertheless "prove[n] the reasonableness of [EDA]'s search" through Fiddes' and Anderson's "relatively detailed, nonconclusory declarations . . . submitted in good faith," the allegations of which Crandell has not genuinely disputed. *See Hill*, 2018 WL 736295, at *3. Because EDA's searches in response to PRO 20-34 and PRO 22-11 were "reasonably calculated to uncover all relevant documents," *Ethyl Corp*. 25 F.3d at 1246, the court will grant the Government's motion for summary judgment as to Crandell's FOIA claims relating to those requests.[16]

---

[16] To the extent that Crandell's complaint seeks monetary relief, such as damages resulting from the Government's delayed response to either of these requests, such relief would nevertheless be unavailable. For one, it is "well-settled" that "monetary damages are not available under FOIA." *Ross v. United States*, 460 F. Supp. 2d 139, 151 (D.D.C. 2006). FOIA confers jurisdiction on federal district courts only "to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant." 5 U.S.C. § 552(a)(4)(B); *see also Smith v. Commc'ns Works of Am. (CWA) Dist. 2*, No. 8:12-cv-0027-AW, 2012 WL 6727150. at *4 (D. Md. Dec. 26, 2012), *aff'd sub nom. Smith v. EEOC*, 517 F. App'x 159 (4th

**D. Crandell's Motion for Partial Summary Judgment**

Crandell moved for partial summary judgment in two respects.  First, Crandell sought summary judgment on "the status of appearance in the case for each of the [] defendants."  (Pl.'s Mot. for Partial Summ. J. 1.)  He alleged that that Fiddes and Anderson (who at the time were named defendants) were in default because they had not yet appeared, and the Government had made the "assumption" that it would be substituted in their place as the sole defendant.  (*Id.* 4 n.1, 5.)  Since then, the court has granted the Government's motion to substitute itself as the sole defendant under the Westfall Act.  (Dkt. No. 30.)  Because the appearance of the EDA employees is no longer at issue, the court denies as moot Crandell's motion for summary judgment as to "the status of appearance in the case" for those individuals.

Crandell also moved for summary judgment as to "recognition of the plaintiff's claims of malfeasant derelictions of duty, constituting harmful and unofficial actions by the individual defendants."  (Pl.'s Mot. for Partial Summ. J. 1.)  Crandell argued that "it has been abundantly clear in the complaint . . . and throughout the response to motion to substitute . . . that the plaintiff claims harm pursuant to extra-official actions by the individual defendants."  In its order granting the Government's motion to substitute, the court acknowledged only that this complaint "alleges violations of the Freedom of Information Act" and no other claims (Dkt. No. 30). Considering the court's conclusion that EDA complied with FOIA in its searches and responses to the requests, even the most liberal construction of the complaint would fail to reveal any viable claims of the type Crandell describes, let alone entitle him to summary judgment on such claims.  The court will deny Crandell's motion for summary judgment in full.

---

Cir. 2013).

**E.  Remaining Motions**

Still awaiting resolution are Crandell's motion for an extension of time to correct a deficiency in service of process (Dkt. No. 12) and the Government's motion for leave to file out of time and for an extension of time to file an answer (Dkt. No. 15).  Because the court has now ruled on each of the parties' dispositive motions and dispensed with all Crandell's claims, the court will deny both pending motions for extensions and leave as moot.

### III.  CONCLUSION

For the foregoing reasons, the court will (1) grant the Government's motion to dismiss the complaint without prejudice as to Crandell's FOIA claims regarding EDA's responses to PRO 18-12 and PRO 19-06 for lack of subject matter jurisdiction; (2) grant the Government's motion for summary judgment as to Crandell's FOIA claims regarding EDA's responses to PRO 21-34 and 22-11; (3) deny Crandell's motion for partial summary judgment; (4) deny Crandell's motion for an extension of time to correct a deficiency in service of process as moot; and (5) deny the Government's motion for leave to file out of time and for an extension of time to file an answer as moot.  The court will issue an appropriate order.

Entered: September 29, 2022.

/s/ Elizabeth K. Dillon
Elizabeth K. Dillon
United States District Judge

20